IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

VINCE J. LENNON, )
)
    Plaintiff, )
)
v. ) CIV. ACT. NO. 2:18-cv-967-ECM
) (WO)
ALABAMA TELECASTERS, INC., )
d/b/a WAKA, )
)
    Defendant. )

**MEMORANDUM OPINION and ORDER**

**I.    INTRODUCTION**

This case is before the Court on the Defendant's Motion to Dismiss (doc. 21) and the Defendant's Motion for Partial Summary Judgment. (Doc. 23). The Plaintiff, Vince J. Lennon ("Lennon"), a former employee of Defendant Alabama Telecasters, Inc., d/b/a WAKA ("WAKA"), claims that the Defendant discriminated against him due to his race, breached his contract, and committed fraud by luring him away from his prior employment with promises that it never intended to fulfill. For the reasons stated, the Defendant's Motion to Dismiss is due to be granted in part and denied in part, and the Defendant's Motion for Partial Summary Judgment is due to be denied.

**II.    BACKGROUND[1]**

The Plaintiff is a male who describes himself as being of Spanish race, ethnicity, and

---

[1] This recitation of the facts is based upon the Plaintiff's complaint, which is presumed to be true for the purposes of the motion to dismiss.

ancestry. He further clarifies that he is from Europe, specifically of Castilian and Basque ethnicity and ancestry. Prior to his employment with WAKA, Lennon was working in Chattanooga, Tennessee as a Sports Anchor and Reporter. He claims he was induced to leave his job in Chattanooga based on WAKA's knowingly false statements; that he was subjected to harassment during his employment; and that WAKA terminated him due to his Spanish heritage in violation of his employment contract.

Lennon alleges that in November of 2015, while employed at a job in Chattanooga that had a promise of continued promotion, he met with the WAKA news director, Glen Halbrooks ("Halbrooks"), about a position with WAKA. Lennon asserts that Halbrooks promised him that he would be the sports director of a three-person department, each of whom would have their own camera and be available for Friday night football. Halbrooks further told Lennon that three fully-staffed bureaus would shoot, edit, and produce high school football highlights and that Lennon would have a say in the staffing of his department. Enticed by these promises, Lennon accepted the job and signed a contract which provided a term of employment from January 11, 2016 to January 7, 2017.

Lennon asserts that Halbrooks made the above representations with the knowledge that they were false with the intent that Lennon would rely upon those statements to his detriment. Lennon asserts that he and his wife left stable employment to relocate to Montgomery, purchased a house, and that his wife was unable to find suitable employment in Alabama.

Lennon further alleges that he was subject to racially derogatory and threatening behavior from Jeff Sanders ("Sanders"), the WAKA news operations manager and five-o-clock news co-anchor. Lennon relates that he would sometimes say "Hola" on the air or conduct microphone

2

checks by speaking numbers in Spanish and that Sanders repeatedly told him to "stop speaking spic" and "stop speaking Mexican." When Lennon pointed out he was speaking Spanish and not "Mexican," Sanders allegedly responded, "same shit." At another time, Sanders proclaimed to Lennon that he was also bilingual, saying "get me a taco paco" and "Paco, taco, now o."

Lennon alleges that in July of 2016, Sanders entered his office swinging an axe. Feeling unsettled by this, Lennon told Sanders he could swing the axe outside. Sanders then approached Lennon and motioned to his midsection, threatening that he could rename him "Bobbitt"[2] with a single chop. Sanders allegedly stated that "wouldn't be good for a Latin lover." Lennon also asserts that Sanders "had it in" for him because Sanders mistakenly believed Lennon was having an affair with Sanders' ex-wife, who was a WAKA news anchor. According to Lennon, Sanders made graphic sexual comments to Lennon about his ex-wife.

In August of 2016, Sanders recorded Lennon's sportscast on his work cellphone and edited the video to lay a target on Lennon's face, with arrows that punctured his face for points. Sanders then sent the image to Lennon during his broadcast and directed Lennon to look at his phone during a commercial break. When Lennon asked why he sent him the image, Sanders told him to "stop speaking spic!" and in an exaggerated southern drawl said that "we don't talk like that around here." Lennon later saw that Sanders posted the same video with arrows coming at his face to Lennon's work-related Facebook page.

Lennon claims that in September of 2016, Sanders falsely accused him of driving in excess of 100 miles per hour while he drove Sanders and another co-worker back to the news

---

[2] Lennon interpreted this as a reference to the widely reported news story about John Bobbitt, whose wife severed his penis.

3

station after a live show in Auburn. When confronted by a manager about the accusation that he was speeding, Lennon admitted that his speed reached 85 miles an hour. Consequently, WAKA suspended Lennon for three days without pay.

When Lennon returned to work following his suspension, he overheard a conversation between Halbrooks and another employee, Bill Gill, about Gill receiving a speeding ticket. According to Lennon, Gill nonchalantly mentioned to Halbrooks that he "got another ticket" and asked Halbrooks what he wanted him to do about it. Halbrooks replied "you take care of it and I'll take care of it," indicating that the ticket was inconsequential. Lennon complained that he was not ticketed for his speeding infraction, but that Halbrooks still suspended him. Lennon asserts that Sanders' accusation that Lennon's speed exceeded 100 miles per hour was not adequately investigated. Gill, on the other hand, was ticketed for speeding while in a company-owned vehicle, but Halbrooks appeared unconcerned about this infraction and never punished Gill.

While Lennon was on suspension, he learned that his job was posted on industry employment webpages. Then, after returning from suspension, Sanders told Lennon that he had seized his mailbox for a newly hired trainee. The following month, Halbrooks and Sanders delivered a letter to Lennon, signed by the WAKA Vice President and General Manager, stating that Lennon's contract would not be renewed, and that his last day of work would be January 7, 2017. While the letter specified that Lennon would continue to work until January, Lennon claims that he was escorted out of the building on November 21, 2016 by Halbrooks, a station manager, and a human resources employee. Lennon was never given a reason for his

termination, and Sanders, along with two other white male employees were promoted the day after his termination.

Lennon further asserts that an agent of WAKA falsely told others in the industry that Lennon had quit his job. He alleges that she did so knowing that such representation could harm his future career prospects. He explains that his termination occurred during the week that the University of Alabama and Auburn University played each other in the Iron Bowl. Lennon contends that this game is "one of the biggest rivalry football games in the nation" and asserts that a sports director quitting that particular week would have negative professional implications.

Lennon was replaced by a Caucasian-American who is not of Spanish, Castilian, or Basque race, descent, or ethnicity. Lennon alleges that he has been unable to find a job and was forced to sell both his Alabama home and his retirement home due to financial hardship.

### III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## IV. DISCUSSION

### A. Race Discrimination under § 1981

#### i. Race claim under § 1981

Lennon claims that WAKA discriminated against him based upon his race in violation of 42 U.S.C. § 1981. He asserts that he is Spanish and of Castilian and Basque race, ethnicity, and ancestry. Section 1981 provides that among other rights, all persons shall have the same right to make and enforce contracts "as is enjoyed by white citizens." 42 U.S.C. § 1981. While § 1981 does not use the word "race," the "Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 174–175 (1976)).

WAKA argues that § 1981 protects only race-based discrimination and that Lennon's claim is a national origin/ancestry claim that is not protected by this statute. WAKA argues that Lennon's discrimination claims based upon his "Spanish-American" heritage is clearly a national origin claim, and that Lennon's assertion that his race is "Castilian and Basque" is an

6

ancestry claim that is similarly not protected by § 1981. WAKA argues that Lennon seeks to cast his national origin/ancestry claims as race claims under § 1981 because he failed to timely file a claim with the Equal Employment Opportunity Commission ("EEOC"), a condition precedent to bringing a claim under Title VII.[3]

While "section 1981 does not encompass discrimination based solely on national origin claims, . . . [i]n some contexts, 'national origin' discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. Omi Ga. Inc.*, 640 F.2d 632, 634 (5th Cir. Unit B. Mar. 1981) (internal citations and quotations omitted).[4] In *St. Francis College*, the Supreme Court acknowledged that § 1981's reach is broader than the limited contemporary concept of "race." *St. Francis College*, 481 U.S. at 613. The Court explained that:

> Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.

*Id*.

In *Bullard*, the Fifth Circuit held that "a complaint by Mexican-Americans alleging racial and ethnic discrimination 'clearly states a cause of action' under the statute." *Bullard*, 640 F.2d at 634 (citing *Alvarado v. El Paso Independent School District*, 445 F.2d 1011 (5th Cir. 1971)). Other courts have explicitly found that "'race' includes ethnicity for purposes of § 1981, so that discrimination based on Hispanic ancestry or lack thereof constitutes racial discrimination under

---

[3] Claims of national origin discrimination are actionable under Title VII.

[4] In *Bonner v. City of Prichard, Alabama*, the Eleventh Circuit adopted as binding all Fifth Circuit decisions prior to the close of business on September 30, 1981. 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

[§1981]." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 598 (2nd Cir. 2016); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2nd Cir. 1987) (concluding "there can be no question that [§ 1981] includes persons like plaintiff who are of Puerto Rican descent"); *Short v. Mando American Corp.*, 805 F. Supp. 2d 1246 (M.D. Ala. 2011) (observing that in some contexts, national origin discrimination is so closely related to race discrimination as to be indistinguishable and considering evidence of national origin discrimination as it related to the Plaintiff's race discrimination claim); *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 335 (S.D.N.Y. 2016) (denying a motion to dismiss a § 1981 claim because it "ma[d]e intuitive sense to think that [the defendant] meant to use 'Mexican' and 'Spanish' in their racial sense . . . rather than their geographic sense, when he used those terms disparagingly to a Hispanic employee neither from Mexico nor Spain"). And Courts have continued to broadly apply § 1981 to claims brought by ethnic immigrants. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840 (9th Cir. 2004) (finding that race has been defined broadly to cover immigrant ethnic groups); *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 692 (N.D. Ill. 2019) (for the purposes of § 1981, "the Court draws a reasonable inference from [the plaintiff's] self-identification as Lebanese-American that they are (or were perceived to be) Middle Eastern or Arab,"); *Oroujian v. Delfin Grp. USA LLC*, 57 F. Supp. 3d 544, 549 (D.S.C. 2014) ("Plaintiff's identification of himself as an 'Armenian,' however, is sufficient for purposes of a Rule 12 Motion to Dismiss to allow his § 1981 claim to proceed); *Topadzhikyan v. Glendale Police Dept.*, 2010 WL 2740163, at *5 (C.D. Cal. 2010) (finding that Plaintiffs, as Armenian–Americans, were members of an ethnic minority for purposes of a § 1981 discrimination claim).

Here, Lennon alleges that a WAKA manager, Sanders, repeatedly demanded that he stop speaking "Mexican," disparagingly referred to him as "Latin Lover," and made derogatory comments to Lennon when he spoke Spanish. These allegations are sufficient to support Lennon's claim that Sanders' harassment was not motivated by Lennon's national origin, but that Sanders was motivated his perception of Lennon's race. At this stage, Lennon has provided sufficient facts to support his allegation that he was subject to discriminatory treatment based on his race. Accordingly, WAKA's motion to dismiss is due to be denied on this claim.

### ii. Lennon sufficiently supported his claims for discriminatory termination and disparate treatment.

In the alternative, WAKA argues that Lennon cannot claim both disparate treatment at work, particularly due to his suspension, and discriminatory treatment for his termination in a single count. WAKA argues that to bring a purportedly discriminatory suspension and a purportedly discriminatory termination under the same cause of action is an impermissible shotgun pleading. WAKA also objects to Lennon incorporating the previous allegations by reference into the section addressing his discrimination claim. While Lennon's complaint could certainly set out his discrimination claims more clearly, the court finds that he has done enough to survive the motion to dismiss.

The Eleventh Circuit's concern with shotgun complaints is largely that a shotgun complaint makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (stating that the unifying feature of shotgun complaints is that "they fail

to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests"). The Eleventh Circuit recently clarified that simply because a complaint incorporates all previous paragraphs by reference does not automatically render the complaint a shotgun complaint. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n,* 942 F.3d 1200, 1208 (11th Cir. 2019) (overturning the district court's decision to dismiss the complaint as a shotgun complaint even though it adopted the allegations of all preceding counts). Even where a complaint contains some irrelevancies, as long as it "give[s] the defendant[ ] adequate notice of the claims against [it] and the grounds upon which each claim rests" then the complaint has done what it needed to do. *Id*. (alterations in original) (quoting *Weiland*, 792 F.3d at 1323).

Here, Lennon alleges three causes of action against one defendant. The fact that Lennon's claims could be set out with more clarity does not alone render his complaint deficient. The complaint gives WAKA adequate notice of the claims and the grounds upon which each claim rests. Accordingly, WAKA's motion to dismiss on this basis is denied.

**B. Fraud**

Lennon alleges that Halbrooks made certain fraudulent representations regarding his future employment. WAKA argues that this claim is barred by the statute of limitations and that Lennon otherwise fails to plead sufficient facts to support this allegation.

    **i.    Lennon did not sufficiently plead a fraud claim.**

Under Alabama law, "[t]he elements of fraud are (1) a false representation (2) of a material existing fact (3) *reasonably relied upon by the plaintiff* (4) who suffered damage as a proximate consequence of the misrepresentation." *Exxon Mobil Corp. v. Ala. Dep't of*

*Conservation & Nat. Res.*, 986 So. 2d 1093, 1114 (Ala. 2007) (emphasis in original, internal quotations omitted). Where, as here, the Plaintiff pleads fraud based upon an alleged promise, the Plaintiff must also prove that when the promise was made, the Defendant had no intention to perform the promised act and intended to deceive the Plaintiff. *Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1210 (Ala. 2008). The "failure to perform alone is not sufficient evidence to show a present intent not to perform." *Heisz v. Galt Industries, Inc.*, 93 So. 3d 918, 928 (Ala. 2012) (quoting *Gadsden Paper & Supply Co. v. Washburn*, 554 So. 2d 983, 987 (Ala. 1989)).

Lennon asserts that Halbrooks made misrepresentations to him regarding staffing, with the purpose of deceiving him, but he does not plead facts which support this assertion. Instead, the facts alleged establish that for approximately five months, Lennon had a fully staffed department with three employees, as promised. After that time, one employee left and one was terminated. To the extent that Lennon asserts that he did not have the promised staffed bureaus to edit and produce high school football highlights, he fails to adequately support this claim as well. Lennon's bald assertion that WAKA knowingly and fraudulently misrepresented staffing levels, without factual support, is insufficient to state a claim. Although Lennon claims Halbrooks falsely represented to him that he would have input on hiring and firing, he likewise pleads no supporting facts. Quite simply, the Plaintiff has failed to allege sufficient facts in the complaint to support his allegation that WAKA did not intend to fulfill certain promises.

Moreover, Lennon asserts that WAKA's failure to perform under the contract evidences promissory fraud, which is not enough to support this claim. Accordingly, WAKA's motion is

11

due to be granted on this claim. Because this claim is dismissed, WAKA's Motion for Summary Judgment as to Lennon's fraud claim will be denied as moot.

### ii. Lennon's fraud claim is otherwise barred by the statute of limitations.

Lennon's fraud claim is otherwise barred by the statute of limitations. Under Alabama law, fraud claims must generally be brought within two years. ALA. CODE § 6-2-38; *Potter v. First Real Estate Co.*, 844 So. 2d 540, 545 (Ala. 2002) (explaining that fraud claims are subject to a two-year statute of limitations). "A fraud claim fully accrues once any legally cognizable damage has proximately resulted, i.e., once the plaintiff has 'detrimentally' relied on the fraud; the fact that additional or different damage subsequently materializes does not alter the fact that a legally cognizable claim has already occurred." *Ex parte Haynes Downard Andra & Jones, LLP*, 924 So. 2d 687, 694 (Ala. 2005) (citing *Gilmore v. M & B Realty Co.*, 895 So. 2d 200, 208 (Ala. 2005)).

Lennon began working for WAKA in January 2016 and lost his first employee in May 2016 when that employee left. He lost a second employee in June 2016 when WAKA fired the employee. According to Lennon, he was never provided the full number of cameras he was promised, and the bureau reporters and photographers never performed the duties promised "once the football season began."[5] However, Lennon did not file this lawsuit until November of 2018. Lennon was surely aware of the staffing issues well in advance of his November 2016 termination. The timeline before the Court indicates that the statute of limitations began to run sometime in the months preceding Lennon's non-renewal, when WAKA did not fulfill the

---

[5] Although Lennon fails to specify the date football season began, it is an indisputable fact that football season begins before the month of November.

purported employment promises regarding staffing and provision of cameras. The statute of limitations thus expired before Lennon brought this case in November 2018 and serves as an independent bar to Lennon's fraud claim.

### C. Breach of Contract

Lennon argues that WAKA breached the employment contract "by terminating Lennon without cause in November of 2016." (Doc. 18 at 17). He argues that he suffered damages when WAKA failed to pay him the salary he was due and failed to pay his makeup allowance. Lennon also claims economic hardship, loss of benefits, embarrassment, humiliation, and mental anguish as a result of the alleged breach. WAKA moves to dismiss this claim for failure to properly plead all the necessary elements. In the alternative, WAKA argues that it is due summary judgment even before discovery because payment records indicate that it continued to pay Lennon his regular salary through the end of his contract period in January.

#### i. Lennon pleads sufficient facts to survive the Motion to Dismiss.

WAKA argues that it is entitled to dismissal because "Plaintiff conclusorily states that he was terminated early without cause, but Plaintiff fails to allege any facts supporting damages." (Doc. 22 at 21). WAKA argues that Lennon's assertion that it did not pay the salary due to Lennon under the contract is "a conclusion." (*Id*.). Lennon pleads that he was terminated without cause and provides specific dates related to the term of his contract and details surrounding his termination. Lennon claims he was never provided a reason for his termination, and alleges that WAKA did not pay him what it owed him under the contract. Lennon adequately pleads facts to support his breach of contract claim. Accordingly, the Defendant's Motion to Dismiss on this basis is denied.

## ii. Summary Judgment is not appropriate at this point in the case.

In the alternative, WAKA moves for partial summary judgment as to the breach of contract claim. WAKA submits the parties' employment contract, an affidavit to authenticate pay records, and pay records that indicate that Lennon was paid his regularly owed salary through the end of his contract period in January. To the extent that Lennon pleads that WAKA failed to pay him his promised makeup allowance, WAKA asserts, without evidence, that the amount has now been paid with interest. WAKA further asserts that the Court lacks supplemental jurisdiction over this claim.

In the Eleventh Circuit, "summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga. Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988). When the non-moving party seeks discovery that would be relevant to the motion for summary judgment, the party should be allowed the opportunity to use the discovery process to obtain that information. *Id.*, at 870. Where the non-movant is unable to present essential facts to oppose summary judgment, the Court may postpone a ruling to permit discovery. *Id.*; *see also Wallace v. Brownell Pontiac-GMC Co.*, 703 F.2d 525, 527 (11th Cir. 1983) ("If the court is satisfied with the nonmovant's explanations, the court may deny the motion without prejudice . . ..").

Pursuant to the parties' employment contract, WAKA may terminate the contract for cause, which includes violations of work policies, willful failure to perform job duties, or any conduct that may bring discredit to WAKA. WAKA further had the right to terminate Lennon if it found that his work was unsatisfactory or otherwise did not meet expectations. In that case, Lennon would be entitled to "receive severance at the rate of three months current salary or at a

rate of one week for each uncompleted full month of the term of this Agreement, **whichever is larger**." (Doc. 24-1 at 7) (emphasis added). The record before the Court reflects that WAKA did not pay Lennon three months of salary after allegedly terminating him in November of 2016. While another section of the contract indicates that WAKA is only required to pay Lennon the salary due under the contract and is not obligated to use Lennon's services, it is not clear which provision should govern these circumstances. (Doc. 24-1 at 6). The evidence submitted does not resolve this ambiguity. The pay records indicate that Lennon was paid his regular weekly salary under the contract through the end of the contract period. However, there are genuine issues of fact regarding amounts owed under the contract.[6] Accordingly, summary judgment at this point in the litigation is not appropriate.

### iii. The Court has jurisdiction over the contract claims.

WAKA argues that the Court does not have original or supplemental jurisdiction over the Plaintiff's breach of contract claim. While a party cannot waive subject matter jurisdiction, WAKA did not raise this argument in its motion to dismiss and appears to parse out the contract claim related to Lennon's salary from the claim related to the makeup allowance. The Court has determined that the breach of contract claim may proceed, which renders WAKA's jurisdiction argument moot. However, the Court must satisfy itself that it has jurisdiction over all claims before it, and thus, explains why it has supplemental jurisdiction over Lennon's breach of contract claims. *See Barnett v. Bailey*, 956 F.2d 1036, 1039 (11th Cir. 1992) ("a court *sua sponte*

---

[6] In his response to WAKA's motion for summary judgment, Lennon asserts that he is due benefits under the contract, including vacation pay and pay for hours worked over 80 in a pay period. These allegations do not appear in the complaint and are not properly before the court.

15

can raise a jurisdictional defect at any time, leading to dismissal of the relevant action"); FED.R.CIV.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

"[I]n any civil action of which the district courts have original jurisdiction," the district court may exercise supplemental jurisdiction over "other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). To determine whether claims are part of the same case or controversy, the Court must "look to whether the claims arise from the same facts, or involve similar occurrences, witnesses, or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996). Here, the Court undisputedly has original jurisdiction over the Plaintiff's § 1981 claims because these claims arise under federal law, and Lennon's breach of contract claim is so closely related to his federal claims as to justify exercising supplemental jurisdiction over the state law claim. Lennon's discrimination and contract claims arise out of his employment with WAKA, and the Court finds that these claims involve many of the same witnesses and evidence, and are so intertwined that they are part of the same case or controversy. Accordingly, the Court finds it is appropriate to extend supplemental jurisdiction over the breach of contract claim.

## V. CONCLUSION

Accordingly, for the reasons as stated, and for good cause, it is

ORDERED as follows:

1. WAKA's Motion to Dismiss (doc. 21) is GRANTED as to Lennon's fraud claim;

2. WAKA's Motion to Dismiss (doc. 21) is DENIED in all other respects;

3. WAKA's Motion for Partial Summary Judgment (doc. 23) is DENIED as moot as to Lennon's fraud claim and DENIED without prejudice in all other respects; and

4. Lennon's Motion to Conduct Limited Discovery (doc. 31) is DENIED as moot.

Done this the 24th day of January, 2020.

                                          /s/ Emily C. Marks
                              EMILY C. MARKS
                              CHIEF UNITED STATES DISTRICT JUDGE